Tonnele *v.* Tonnele.

JOHN TONNELE'S TRUSTEES

*v.*

LAURENT J. TONNELE et al.

A testator gave a specified part of his homestead to his son, for life, and the other part to his daughters, for life, and the residue of his estate to the son and daughters, in equal parts, for their respective lives. The homestead was

sold by the executors, the son's part producing $24,000, and the daughters', $26,000, all of which was invested by the executors, as well as the residue, in a common fund made up of those moneys and the rest of the estate, and the income therefrom divided according to the interests of the son and daughters therein.—*Held*, that those who are interested in the proceeds of the sale of the homestead are not entitled to preference, in respect of those proceeds, in the administration of the fund.

Bill for directions.   On final hearing on bill.

*Mr. A. Zabriskie*, for complainants.

*Mr. C. L. Corbin* and *Mr. M. T. Newbold*, for defendants.

THE CHANCELLOR.

John Tonnele, late of Hudson county, died in 1854.   By his will (a full abstract of which will be found in *Wetmore* v. *Zabriskie, 2 Stew. Eq. 62*), after a gift to his wife, he gave part of his homestead to his son, for life, and the rest of that property to his daughters, for life, and gave the residue of his estate to his son and daughters, in equal shares, for their respective lives. He made his executors trustees of the property given to his children, except the part of the homestead given to the son.   In 1864 his executors sold the homestead, the part devised to the son for life, for $24,000, and the rest for $26,000.   They also converted the residue of the estate, with perhaps insignificant exceptions, and invested the proceeds of all the sales in bonds and mortgages and government securities.   There never was any assignment of the securities to the funds, but up to May 13th, 1878, the interest and income of the securities were annually divided as follows :   The son was credited with legal interest on the $24,000, and each daughter with like interest on her share of $25,380.91, which is the balance of the $26,000 which remained after paying to the surviving children of the testator their shares of the interest of one of the daughters who died, in the share of her sister who predeceased her, in the $26,000, and then each child was credited with one-sixth of the balance of interest and income.   At the last-mentioned date, in view of the

fact that there was depreciation of some of the securities, another method of distribution was substituted (and it has ever since been pursued), by which the whole interest and income of the fund were distributed in the proportions which the interests of the children respectively bore to the whole fund, giving no preference to their interests in the proceeds of the sale of the homestead property. The son is dissatisfied with this latter method, and the trustees now ask advice on the subject.

The son claims that the first-mentioned method is the just one, because, as he insists, the money derived from the sale of the homestead should be treated as a special fund, as it was treated prior to May 13th, 1878. But this claim cannot be allowed. The trustees did not, as before stated, make any assignment of the securities to the respective funds, which, for identification, they designated as the son's special fund, the daughters' special fund and the general fund. There is no question raised as to the character of the investments. According to the bill, they were all of the description which is recognized as allowable for trust-moneys. There is no ground for claiming preference for the money derived from the sale of the homestead. The cases on the subject of the order of liability for the payment of debts of lands specifically devised and land passing under devise of the residue, which were cited on the argument, have no applicability to this matter. Nor do the cases on the subject of abatement of legacies apply. Here is no question of liability, but a claim that of three trust funds, in the hands of the same trustee, which have been mingled in investment, two have preference over the other merely because the former are derived from specific devise, and the latter from devise of the residue. It would perhaps (especially in view of the fact that there has been depreciation) have been more satisfactory if the trustees had assigned the investments to the funds so that those belonging to each might have been identified, but it cannot be said that their failure to do so has done any wrong to the beneficiaries. The will gave no direction that the funds should be kept separate from each other. The gains and losses

upon the investments must of course be proportionately distributed.

The annual net income should be distributed in the proportions which the interest of each child in the fund bears to the whole fund, without preference.

One of the daughters has died, leaving three children, who are now entitled to and demand their interest in the fund given to their mother for life. The bill asks direction on that head, but the matter was not discussed on the hearing. Their share may be paid to them by a just and equitable assignment of securities.